UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KELLIE S. MITCHELL, | ) |
|    Plaintiff, | ) ) ) |
| v. | )   Case No: 1:15-cv-168-CHS |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
|    Defendant. | ) ) |

## MEMORANDUM

I.    Introduction

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Kellie Mitchell's ("Plaintiff") claim for Supplemental Security Income ("SSI"), as provided by the Social Security Act.

The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 17]. Pending before the Court are Plaintiff's Motion for Summary Judgment [Doc. 12] and Defendant's Motion for Summary Judgment [Doc. 14].

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision. Accordingly, the Court **DENIES** Plaintiff's Motion [Doc. 12] and **GRANTS** Defendant's Motion [Doc. 14].

1

II. Background

   A. Procedural History

On December 13, 2010, Plaintiff protectively filed for SSI under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, based on major depressive disorder, lumbago with lumbosacral neuritis, myofascial pain, and obesity with hypertension and edema of the lower extremities[1] [Tr. 96-106; Doc. 13 at 2].[2] Plaintiff's claim was denied initially and on reconsideration [Tr. 66-70, 77-79]. Following a hearing, Administrative Law Judge ("ALJ") Edward Snyder issued an unfavorable decision dated April 5, 2012 [Tr. 11-21]. The Appeals Council denied review of ALJ Snyder's decision [Tr. 1-3].

On April 23, 2013, Plaintiff filed suit in this Court [*Mitchell v. SSA*, No. 1:13-cv-134]. Following a Joint Motion for Entry of Judgment with Remand Under Sentence Four of 42 U.S.C. § 405(g), this Court remanded the case with instructions for the ALJ to further evaluate the opinion evidence and Plaintiff's residual functional capacity and, if necessary, to obtain supplemental vocational expert testimony [Tr. 616-619]. The Appeals Council sent the case back to an ALJ [Tr. 623-627].

ALJ Ronald Feibus conducted a hearing on September 16, 2014 [Tr. 570-596]. On February 5, 2015, Plaintiff appeared and testified at a second hearing before ALJ Feibus [Tr. 496-569]. On March 25, 2015, the ALJ issued a decision finding that Plaintiff "has not been under a disability" as defined in the Act [Tr. 486]. Plaintiff has exhausted her administrative remedies,

---

[1] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Summary Judgment [Doc. 12].

[2] An electronic copy of the administrative record is docketed at Doc. 10.

2

and the ALJ's decision stands as the Commissioner's final decision subject to judicial review. *See* 42 U.S.C. § 405(g).

  B. Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is currently a 46-year-old individual who has a limited education and no past relevant work [Tr. 485; Doc. 13 at 3].

*Plaintiff's Testimony and Medical History*

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

*The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since December 13, 2010, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: Degenerative Disc Disease of the lumbar spine; Obesity; Major Depressive Disorder; Generalized Anxiety Disorder and History of Substance Abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c): except that the claimant is limited to unskilled work involving simple, repetitive and routine tasks with one to two step instructions. Contact with the public should be infrequent (between occasional and frequent), but the claimant has no limitation in interacting

3

with coworkers or supervisors. Changes in the workplace should be infrequent (between occasional and frequent) and gradually introduced.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on December 26, 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 413.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 13, 2010, the date the application was filed (20 CFR 416.920(g)).

[Tr. 474-486].

   III. Analysis

   A. Standard of Review

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 416.920. The following five issues

are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of

5

Case 1:15-cv-00168-CHS   Document 19   Filed 03/06/17   Page 5 of 13   PageID #: 1076

choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B. Discussion

Plaintiff presents two issues for review: (1) whether the ALJ erred at Step 5 where the ALJ's Residual Functional Capacity ("RFC") finding was based on an arbitrary and capricious interpretation of the word "infrequent"; and (2) whether the ALJ erred in accepting the opinions of non-examining medical sources over the opinions of examining medical sources [Doc. 13 at 17-18]. The Court will address the second issue first.

1. *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erred in assessing the medical opinion evidence offered by four consultative sources [Doc. 13 at 18-19]. Plaintiff contends that the ALJ improperly gave

"great weight" to the opinions of two non-examining consultative sources who testified at the hearing, Drs. Francis and Davis, while giving "little weight" to the opinions of two consultative sources who had actually examined her, Drs. Mullady and Langford [*Id.*]. Plaintiff argues that the ALJ "did not give adequate reasons" to support his assessment of the non-treating sources' opinion evidence [*Id.*].

As the ALJ noted, Plaintiff provided "no statements from any treating physicians to the effect that she is unable to work or that her impairments are limiting her activities in any significant way" [Tr. 482]. When there is no treating source opinion that is deemed controlling, an ALJ must weigh the medical opinions offered by non-treating sources based on factors such as the nature of the treatment relationships, the specialization of the medical sources, and the consistency and supportability of the opinions. *See* 20 C.F.R. § 416.927(c), (e); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). An ALJ is "not bound" by the findings of a state agency physician but is required to consider his opinion and explain the weight given to his opinion. 20 C.F.R. § 416.927(e)(2); Soc. Sec. Rul. 96-6p. The Regulations explain that "[s]tate agency medical and psychological consultants and other program physicians . . . are highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i).

In his decision, the ALJ considered the opinions of each consultative source in considerable detail. First, the ALJ reviewed the medical evidence from Dr. Thomas Mullady, M.D., who saw Plaintiff on October 13, 2014, for a consultative medical evaluation [Tr. 479-480, 916-924]. Upon physical examination, Dr. Mullady noted that Plaintiff had "a moderate decrease in range of motion of the lumbar spine" and was "markedly obese . . . with a BMI of 48" [Tr. 916-918]. At the conclusion of his examination, Dr. Mullady set forth limitations indicating Plaintiff could

7

perform less than a full range of sedentary work [Tr. 919-924]. The ALJ explained his decision to give Dr. Mullady's opinion little weight by noting that it was "inconsistent with the medical evidence of record and his own clinical examination findings, which showed no more than 'mild' degenerative disc disease of the lumbar spine. The spine impairment is stable and treatment is by pain management" [Tr. 480].

The ALJ also noted that Dr. Mullady's assessment was inconsistent with the opinion of Dr. Anthony Francis, a board certified orthopedic surgeon, who had reviewed Plaintiff's medical record before testifying at the February 5, 2015, hearing [*Id.*]. Dr. Francis testified that Plaintiff could perform medium work activity including lifting up to fifty pounds occasionally and up to twenty-five pounds frequently; standing or walking for six hours out of an eight-hour workday, and sitting for two hours out of an eight-hour workday [Tr. 512]. Dr. Francis agreed that Plaintiff's "ability to perform postural activities such as bending, squatting, stooping, kneeling, and crawling," and "the ability to reach, push, [and] pull with the extremities" would be limited to a frequent basis [*Id.*]. The ALJ gave "great weight" to Dr. Francis's opinion, finding that it was "consistent with the medical evidence of record, including recent objective imaging that supports no more than mild degenerative disc disease, as well as [Plaintiff's] treatment regimen being stable with pain management" [Tr. 481]. The ALJ also noted that Dr. Francis was an orthopedic specialist, had thoroughly reviewed Plaintiff's medical history, and "was familiar with the Commissioner's regulations, rulings, and . . . evaluation procedures" [*Id.*].

The ALJ also reviewed the medical evidence from Dr. Dee Langford, Ed.D., who completed a consultative psychological evaluation of Plaintiff on April 4, 2014 [Tr. 480-481, 773-780]. Dr. Langford opined that Plaintiff had a marked impairment of social function, a moderate

to marked impairment for complex instructions, and a moderate to marked impairment in interacting with others, including supervisors and coworkers, and responding to changes at work [Tr. 778-779]. The ALJ gave "little weight" to Dr. Langford's assessment, finding that it was "internally inconsistent and somewhat confusing as to specifics, with some limitations described in terms of 'may have difficulty'" [Tr. 481]. The ALJ found that the "report clearly demonstrates [Plaintiff] could sustain at least simple work with some limitations concerning social contacts and adaptation" [*Id.*]. In addition, the ALJ noted that Dr. Langford observed, on two occasions, that Plaintiff "may well have been exaggerating her complaints" [*Id.*]. The ALJ noted that, while he gave Dr. Langford's assessment little weight on its own, he had considered the report along with Plaintiff's treatment records and the opinion of Dr. John Davis, Ph.D. [*Id.*].

Dr. Davis also testified at the February 5, 2015 hearing as a non-examining psychological medical expert [Tr. 482, 526-549]. Dr. Davis opined that Plaintiff was limited to simple, repetitive, and routine tasks with one to two step instructions, that she could interact with the public on an infrequent basis but had no limitations interacting with coworkers and supervisors, and could concentrate, persist, or keep pace at simple work for two hours at a time within an eight-hour workday and for a 40-hour workweek [Tr. 482, 536-538]. As noted below, Dr. Davis also agreed that Plaintiff could adapt to infrequent workplace changes that were gradually introduced [Tr. 482, 537]. The ALJ gave "great weight" to Dr. Davis's opinion, finding it to be "consistent with the medical evidence of record showing [Plaintiff's] mental impairment had improved with ongoing therapy" [*Id.*]. The ALJ also found that Dr. Davis's opinion was consistent with Plaintiff's own function reports, "which like her medical record, supports no more than moderate functional limitations" [*Id.*]. Finally, the ALJ noted that Dr. Francis was a

9

licensed psychologist, had reviewed Plaintiff's entire psychological history, and was "familiar with the Commissioner's regulations, rulings, and procedures used in making disability determinations" [*Id.*].

The Court has reviewed the ALJ's assessment of the medical opinion evidence and finds that the ALJ considered the opinions of the consultative sources in great detail and, in fact, provided a thorough explanation for his decision to give great weight to the opinions of Drs. Francis and Davis while giving little weight to the opinions of Drs. Mullady and Langford. For these reasons, the Court concludes that the ALJ did not err in accepting the opinions of non-examining medical sources over the opinions of examining medical sources. After reviewing the record, the Court concludes that substantial evidence supports the ALJ's assessment of the medical opinion evidence.

2. *The ALJ's Definition of the Word "Infrequent" in RFC Formulation and in Hypothetical Question*

In his hearing testimony, Dr. Davis used the word "infrequent" when describing Plaintiff's psychological limitations [Tr. 537]. Specifically, Dr. Davis opined that Plaintiff's limitations included "infrequent" interaction with the public and "infrequent," gradually introduced changes in the workplace [*Id.*]. In discussing this limitation with the vocational expert, the ALJ acknowledged that the term "infrequent" is undefined in the Regulations, but reasoned that because "[o]ccasional is [defined as] up to 33 percent" and "[f]requent is [defined as] up to 66 percent," "40 to 50 percent would be infrequent . . . ." [Tr. 560]. The ALJ also used the word "infrequent" in formulating Plaintiff's RFC, finding that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c)[,] except . . . [c]ontact with the public

10

should be infrequent (between occasional and frequent), but [Plaintiff] has no limitation in interacting with coworkers or supervisors. Changes in the workplace should be infrequent (between occasional and frequent) and gradually introduced" [Tr. 477].

Plaintiff's argument on this point is as follows:

> The ALJ's definition of 'infrequent' was arbitrary; ALJ Feibus defined 'infrequent' in a way that is contrary to a common understanding and usage. The result is a decision that is fundamentally flawed. [Plaintiff] is unaware of any formal SSA definition of 'infrequent.' Nevertheless, the word is commonly defined to mean 'rare.' For the ALJ to use a limitation outlined by an expert, and then unilaterally define the limitation to mean something contrary to common meaning, is arbitrary and capricious, and constitutes legal error.

[Doc. 13 at 18].

The Court finds no merit in this argument. There is no requirement that the ALJ's formulation of Plaintiff's RFC or the hypothetical question to the vocational expert directly correspond to Dr. Davis's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Rather, it is the ALJ's role to develop the RFC based on all of the evidence in the record. *Id*. Dr. Davis did not define the term "infrequent" when giving his testimony, so it was the ALJ's duty as the finder of fact to interpret Dr. Davis's testimony. The ALJ offered a clear definition of the term on the record when posing his hypothetical question to the vocational expert. Regardless of the dictionary or other definition of the term "infrequent," the ALJ interpreted the term to mean less than frequent, but more than occasional. The Court finds that the ALJ's definition of "infrequent" is not arbitrary and is in fact a reasonable definition of the word given Dr. Davis's testimony.

When the ALJ presented such a definition of "infrequent" in a hypothetical question to the vocational expert, the vocational expert testified that the full range of unskilled medium work

11

would be reduced by twenty-five percent [Tr. 561]. The vocational expert further testified that the specific jobs of hand packager, general laborer/construction clean up, and candy sorter were compatible with the limitations set forth in Plaintiff's RFC [Tr. 563]. It was the ALJ's prerogative to include only those limitations in the hypothetical question that he found credible and well supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

Substantial evidence in the record supports the ALJ's formulation of Plaintiff's RFC and the hypothetical question to the vocational expert, and the Court discerns no error on the ALJ's part at Step 5.

Conclusion

Having carefully reviewed the entire administrative record and the parties' briefs filed in support of their respective motions, the Court concludes that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision, and that neither reversal nor remand is warranted on these facts. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *See, e.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED**; Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**; the case is **DISMISSED**; and the Court directs the Clerk to **CLOSE** the case.

s\ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE